IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA HOSIER,                      :
                                      :     Case No.4:05-CV-1324
                    Plaintiff         :
                                      :           Judge Jones
           v                          :
                                      :
R. JAMES NICHOLSON,                   :
SECRETARY OF THE                      :
DEPARTMENT OF VETERANS                :
AFFAIRS,                              :
                    Defendant         :

## MEMORANDUM AND ORDER

### September 28, 2006

Pending before the Court is Defendant's Motion for Summary Judgment ("the Motion") (doc. 23) filed on July 10, 2006.

Federal question jurisdiction is proper pursuant to 28 U.S.C. § 1331.     For the reasons that follow, the Motion is granted.

## PROCEDURAL HISTORY:

On June 30, 2005, Plaintiff Patricia Hosier ("Plaintiff" or "Hosier") commenced this action by filing a complaint (doc. 1) in the United States District Court for the Middle District of Pennsylvania against the Defendant, R. James Nicholson, Secretary of the Department of Veterans Affairs, alleging that officials at

1

the Veterans Administration Medical Center ("VMAC") in Wilkes-Barre,

Pennsylvania, discriminated against her on the basis of her disability.  The

complaint contains seven counts, however, Plaintiff states in her brief in opposition

to the Motion (doc. 36 at 5, n.1) that she voluntarily withdraws her claims under

Counts IV, V, and VI.  Accordingly, the remaining claims are brought pursuant to

29 U.S.C. § 791, The Rehabilitation Act of 1973 (Counts I, II and III) and the Civil

Service Reform Act, 5 U.S.C. § 7702 (Count VII).  On September 15, 2006, the

Defendant answered the complaint.  (Rec. Doc. 9).

The instant Motion (doc. 23) was filed on July 10, 2006.  The Motion has

been fully briefed by the parties (docs. 24, 36, 42 and 46) and is therefore ripe for

our review.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

FED .R. CIV. .P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335,

340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could

draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."
Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material."  Id. at 248.  A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

## STATEMENT OF RELEVANT FACTS:

The Plaintiff was hired as an licensed practical nurse ("LPN") at the VMAC in October of 2001.  (Rec. Doc. 25 at ¶4).[1]  Prior to her employment at VMAC, Plaintiff was employed as an LPN at Mercy Hospital in Wilkes-Barre, Pennsylvania in the "med-surg" unit, a rehabilitation unit.  (Rec. Doc. 25 at ¶7).

In early 2001, Plaintiff developed chronic venous insufficiency ("CVI"), which caused significant problems to her lower right leg.  (Rec. Doc. 25 at ¶8-11).

---

[1] Where Plaintiff has not disputed a fact, we refer only to the Defendant's Statement of Material Facts (doc. 25) n the interests of brevity.

Plaintiff further suffers from arthritis, degenerative joint disease ("DJD") of the right knee and lumbar radiculopathy, a disease of the nerve roots in the lumbar spine, which causes her to experience pain on the right side of her body, into her groin, down her leg and into her toes. (Rec. Doc. 25 at ¶12, ¶19). The Plaintiff's conditions affect her abilities in the following manners: "stairs are difficult, . . . sitting on the floor is difficult, . . . basically walking for any length of time is difficult, sitting with my knee bent is difficult." (Rec. Doc. 25 at ¶ 15). The Plaintiff can only walk for "approximately 15-20 minutes" at a time, which period decreases as the day passes to only "10-15 minutes." (Rec. Doc. 25 at ¶ 15).

The Plaintiff's CVI condition causes her to walk, stand and sit only intermittently, and specifically her right lower leg is most affected. Her lumbar radiculopathy severely limits her ability to stretch and causes her to suffer back spasms. (Rec. Doc. 25 at ¶16, ¶20). Plaintiff's leg and back problems interfere with her ability to drive, sometimes up to three times in one week. (Rec. Doc. 25 at ¶60). Plaintiff's conditions prevent her from lifting and she estimates twenty pounds to be the maximum amount of weight she can lift. When the Plaintiff lifts something that is too heavy, her back goes into spasm and she must sit or lie down. (Rec. Doc. 25 at ¶21-22). Plaintiff's arthritis causes her to lose her grasp on things at times. (Rec. Doc. 25 at ¶59). In total, Plaintiff's disabilities (CVI, DJD and

lumbar radiculopathy) are permanent, substantial limitations, and progressive conditions.  (Def. Ex. 16).

Plaintiff alleges that at the time of her hire, nurse manager Kathy Yacovelli ("Yacovelli") agreed to Plaintiff's request that she be kept in the emergency room/clinics due to her physical conditions. (Rec. Doc. 35 at 14).  Plaintiff further alleges that LPNs were infrequently reassigned to areas of the hospital to which they were not assigned, and that is the ability to work in any and all areas of the hospital was not an essential function of the job of each LPN at VAMC.  (Rec. Doc. 35 at 3).   The Defendant alleges that "it is a common practice of the VAMC for . . . LPNs . . . to be reassigned to other areas of the VAMC based upon staff absences and patient needs.  (Rec. Doc. 25 at ¶26).

On an occasion in February of 2003, Edward Matkins ("Matkins"), Plaintiff's supervisor, reassigned Plaintiff for a day to work as a floor nurse at the Nursing Home Care Unit ("NHCU").  The NHCU is a floor nursing assignment as opposed to a clinical nursing assignment and therefore generally involves patients who demand longer term care, requiring more vigorous work on behalf of the nursing staff.  LPN duties in the NHCU are more physically demanding, including more detailed and strenuous patient care, turning patients, lifting patients, bending and stretching, pushing and pulling while transporting patients, and frequent walking

6

to distribute medications.  (Rec. Doc. 25 at ¶33-35).   After Plaintiff performed this one-day reassignment to the NHCU, she had great physical problems, including experiencing great pain and swollen legs.  In fact, her leg actually turned black from a lack of circulation.  (Rec. Doc. 25 at ¶50).  Plaintiff discussed her medical condition and the difficulties she encountered in the NHCU with Matkins following her one-day reassignment to the NHCU in February 2003.  (Rec. Doc. 25 at ¶49). Matkins did not request Plaintiff to supply medical documentation regarding her condition at that time.  (Rec. Doc. 25 at ¶ 52). Plaintiff requested Matkins not "float" her to the NHCU again.  (Rec. Docs. 25 at ¶; 35 at 6).

In March of 2003, the VAMC experienced "severe staffing problems in the nursing home[NHCU]," prompting a reassessment of all VAMC nursing areas to determine whether reassignment, readjustment or realignment of nursing services could assist in lessening the impact of the nursing shortage in the NHCU.   The evaluation team consisted of Linda Stout ("Stout"), Nurse Executive, Valerie Boytin ("Boytin"), the Assistant Chief of Nursing for Primary Care,  and the Associate Chief of the NHCU.  (Rec. Doc. 25 at ¶38 and 40).  Boytin testified that in performing the evaluation, the team considered the patient census and the acuity levels of the patients and the various levels of care those patients required.  With regard to the ER, Boytin considered the patient flow, which she testified indicated a

decrease in volume of patients, as well as acuity of patient conditions.  Concerning the primary care area, Boytin considered the staffing formulas for every 1,200 patients.  (Rec. Dco. 25 at ¶41).

Prior to 2003, Stout did not know Plaintiff. Stout first learned of Plaintiff's inability to perform the physical functions of an LPN in the NCHU on or after the date she was to begin in the NHCU but did not appear for work. Plaintiff never discussed her medical condition directly with Stout.  (Rec. Doc. 25 at ¶109-111). Stout had no knowledge of Plaintiff's prior EEO activity at the time the LPN position was transferred to the NHCU.  (Rec. Doc. 25 at ¶112).  It is disputed by the parties whether or not Boytin had any direct or specific knowledge of the Plaintiff's limiting conditions. (Rec. Docs. 35 at 5; 25 at ¶37).  Boytin's testimony is that she had no knowledge of Plaintiff's conditions prior to reassignment. Plaintiff alleges that Boytin was aware of Plaintiff's conditions because Matkins "would have" told her by virtue of his position as nurse manager and his conversation with Plaintiff in February 2003.  (Def. Ex. 2, p. 88-92). It is not disputed that Boytin had no knowledge of whether Plaintiff had any previous EEO activity prior to the reassignment of the LPN position from the ER to the NHCU, nor did Plaintiff ever discuss her medical conditions with Boytin.  (Rec. Doc. 25 at ¶98-99).

Following the evaluation process, Boytin concluded that three nursing assistant positions from floor 4 east could be reassigned to the NHCU; that the LPN position in the ER could be transferred to the NHCU; and, six weeks later, Boytin concluded that she had "more room" to transfer a registered nurse position out of the ER to psychiatry services.  (Rec. Doc. 25 at ¶44).

On March 20, 2003, Plaintiff was advised by her supervisor that her LPN position in the ER had been transferred to the NHCU.  Matkins, Yolanda Rigsby ("Rigsby") and Sharon Koiro ("Koiro") were present at that meeting.  (Rec. Doc. 25 at ¶45).  In response, Plaintiff told Matkins, Rigsby and Koiro that she would not be able to perform the LPN responsibilities in the NHCU.  (Rec. Doc. 25 a ¶46).  On that day, Plaintiff left work early on sick leave because she was upset over the transfer.  (Rec. Doc. 25 at ¶47).

Following the March 20, 2003 meeting, Plaintiff was advised by the Union to have her physician fill out a physical assessment form and return it to the VAMC. Plaintiff's provider, Dr. Jacobs, filled out the said form on March 21, 2003.  (Rec. Doc. 25 at ¶53).  On April 1, 2003, Plaintiff returned the completed physical assessment form and requested, in writing, a "reasonable accommodation to Federal employment for my medical condition. (Rec. Doc. 25 at ¶56).  In the completed form, Dr. Jacobs indicated Plaintiff could, in one day, sit for eight

hours, walk for two or three hours, could lift up to ten pounds, bend for between zero and one hour, and do no squatting, climbing, kneeling, twisting or standing. (Def. Ex. 9 at 1).  Dr. Jacobs further indicated that Plaintiff "cannot lift . . . cannot stand for long periods . . . can work in sedentary job."  (Def. Ex. 9 at 2).[2]

On April 2, 2003, Nello Berrettini ("Berrettini"), a human resources representative at the VAMC, directed correspondence to Plaintiff advising her that the VAMC had received her medical documentation that reflected that she could not perform the essential functions of her position as an LPN.  In that same letter, Berrettinni advised Plaintiff that the VAMC was unable to assume the liability incurred with allowing her to continue to provide care for the veteran patients, and she was relieved of her duties pending a decision on her request for an accommodation.  (Rec. Doc. 25 at ¶61). Also on April 2, 2003, Dr. Ramesh Shah, Associate Chief of Staff for Education, Chief of Medical Service, Director of Internal Medicine Residency Training Program, and the Director of Continuing Medical Education at the VAMC, reviewed the documentation Plaintiff submitted in

---

[2] Plaintiff, however, disagrees with parts of Dr. Jacobs' assessment.  Plaintiff believes she could only sit for up to three or four hours per day and walk for up to four hours per day. Plaintiff believes she can bend, squat, and climb for no more than one hour per day, and stand for no more than two or three hours per day.  Plaintiff agrees that she can do absolutely no lifting, twisting, kneeling, pushing or pulling. Plaintiff also agrees that she cannot reach or work above the shoulder because to do so causes her to experience back spasms.  (Rec. Doc. 25 at ¶58).

addition to the LPN functional statement, and he concluded that Plaintiff was unable to work as an LPN at the VAMC.  (Rec. Doc. 25 at ¶62).  At that time, additional medical information was requested to be provided to the VAMC regarding Plaintiff's physical condition by her provider.  (Rec. Doc. 25 at ¶63).

On April 7, 2003, Dr. Jacobs sent an unaddressed memorandum entitled "Amendment to Medical Leave Forms" to the VAMC.  The memorandum states:

> Patricia is capable of working in the area of the ER (emergency room) or clinic areas as she has been doing without difficulty.  She is unable to tolerate floor nursing due to her medical problems.  She would be able to do CPR if the need arose until a replacement relieved her. Sitting, walking, lifting, bending, squatting, kneeling, twisting and pushing can all be tolerated intermittently on as need basis as she has done up till this point without difficulty providing it is intermittently done.

(Def. Ex. 13).  Thereafter, on April 10, 2003, Plaintiff was notified by VAMC that the information she provided on April 1, 2003 was insufficient for the agency to determine whether she was a qualified individual with a disability, and Physician's Evaluation of Functional Limitations form was provided for her physician to complete and return to the VAMC by April 21, 2003.  (Def. Ex. 14).

On May 1, 2003, Plaintiff completed another written request for a "reasonable accommodation," specifically requesting that she be returned to the ER/clinic areas.  (Def. Ex. 15 at 2).  Plaintiff did not return the said form until July

11

15 or 16, 2003.  (Rec. Doc. 25 at ¶69).  In that functional evaluation, Dr. Jacobs

declared Plaintiff's prognosis as severely guarded concerning her CVI; the

prognosis of her DJD in the right knee was poor; and the lumbar radiculopathy

prognosis was guarded.  (Rec. Doc. 25 at ¶70; Def. Ex. 16).  Dr. Jacobs

concluded that Plaintiff could no longer do floor nursing, and could not perform as

a nurse in the NHCU.  (Def. Ex. 16 at 5).  In particular, Dr. Jacobs acknowledged

that he "felt very strongly that she would be unable to cope with a job in a floor

setting which would put herself and her patients at risk," and that Plaintiff suffered

from medical conditions that limited her in her everyday living.  (Def. Ex. 16 at 8).

On July 2, 2003, Dr. Juan J. DeRojas completed a one-page, unaddressed

correspondence relating to his examination of Plaintiff.  His assessment was

"severe venous insufficiency with venous hypertension."   Dr. DeRojas

recommended "avoid[ing] leg dependency for any length of time," and states that

"[a]t this point I would highly recommend a job where she can sit and elevate her

legs and this is a chronic debilitating condition."  (Def. Ex. 17).

Berrittini, in conjunction with the nurse managers in the respective areas of

nursing at the VAMC, updated the essential functions for the LPN position,

including Primary Care and Medicine Service (which includes the ER and clinics)

as well as the NHCU.  Those essential functions were reviewed by a committee

prior to being routed to nursing leadership for approval. (Rec. Doc. 25 at ¶116-117).  Both the Primary Care and Medicine Service and NHCU assessments details under "Essential Functions," "Job is predominantly indoors, it is not sedentary and routinely requires lifting, stretching, kneeling, twisting, bending, etc."  (Def. Ex. 19 and 20 at 2).  These documents were updated on April 4, 2003, after the decision was made to eliminate the LPN position in the ER and clinics.

In a memorandum addressed to Berrettini and dated July 21, 2003, Dr. Shah stated that based upon the medical documentation submitted by Plaintiff, considering the functional statement for the LPN positions and the severity of Plaintiff's restrictions, it was his medical opinion that there was no LPN position in the VAMC that could accommodate Plaintiff.  (Def. Ex. 17).

On July 30, 2003, the VAMC advised Plaintiff that, upon review of her medical documentation, she was not a qualified individual with a disability since she could not perform the essential functions of the LPN position with or without a reasonable accommodation.  (Def. Ex. 25).   That correspondence also advised Plaintiff that the VAMC would make the effort to reassign her to a position at a grade level for which she qualified with duties she could physically perform.

On August 5, 2003, Theodore Gabriel ("Gabriel"), Chief of Human Resources at the VAMC, informed Plaintiff's attorney that the VAMC  would not

be able to accommodate Plaintiff in an LPN position based upon the medical limitations described by her physician.   However, Gabriel offered Plaintiff a reassignment to the position of Medical Support Assistant  (Def. Ex. 26).  By correspondence dated August 8, 2003, Plaintiff accepted the offered position and requested her first day of duty be September 2, 2003.   To date, Plaintiff still holds that position.  (Rec. Doc. 25 at ¶77).

Plaintiff alleges that after she did not accept the transfer to NHCU, the VAMC did not replace her with an LPN, but instead added two nursing assistants ("NA")  to duty at the NHCU on November 16, 2003.  Two more NA positions were added to the NHCU on November 28, 2003.  (Rec. Doc. 47).

## DISCUSSION:

### A.    Rehabilitation Act of 1973 Discrimination Claims

Section 501 of the Rehabilitation Act of 1973[3] prohibits disability discrimination by the federal government against federal employees.  To establish a *prima facie* violation of the Section 501, a Plaintiff must demonstrate that she: (1) has a disability[4]; (2) is otherwise qualified to perform the essential functions of the

---

[3] Section 501 is codified at 29 U.S.C. § 791.

[4] An individual with a disability is any person who: (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.  29 U.S.C. § 706(8)(b).  The

14

job with or without reasonable accommodations by the employer; and (3) suffered

an adverse employment action because of that disability. The plaintiff must make a

*prima facie* showing that a reasonable accommodation is possible.   If the plaintiff

establishes a *prima facie* case, the burden shifts to the defendant to prove, as an

affirmative defense, that the accommodations requested by the employee are

unreasonable or would cause an undue hardship on the employer. See Donahue v.

Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000); Deane v. Pocono Medical

Center, 142 F.3d 138, 142 (3d Cir. 1998).  Defendant argues that the Plaintiff is not

qualified to perform the essential functions of the LPN position

at VAMC, and accordingly Plaintiff fails to establish a *prima facie* case under

Count I.

Defendant concedes that Plaintiff is an individual with a disability and that

Plaintiff suffered an adverse employment action in the termination of her

employment as an LPN from the NHCU of the VMAC. Plaintiff obviously

concedes that she is an individual with a disability, however Plaintiff asserts that the

adverse employment action was her termination from the LPN position in the

Primary Care Medicine Service, Clinic and Emergency Room Area, and not her

---

Rehabilitation Act and the Americans with Disabilities Act (ADA) generally are interpreted consistently.
Emerson v. Thiel College, 296 F.3d 184 (3d Cir. 2002).

reassignment to the NHCU.  Inasmuch as both parties concede that Plaintiff

suffered an adverse employment action, it is not necessary to this Court's analysis

to distinguish between the two adverse employment actions.

The heart of Defendant's argument is that Plaintiff's CVI, DJD of the right

knee and lumbar radiculopathy prevent her from performing certain of the physical

tasks essential to the position of LPN at the VMAC, and therefore she is not

otherwise qualified to perform the essential functions of the job, and consequently,

falls outside of the purview of the Rehabilitation Act.  Plaintiff argues that she is

qualified to perform the essential functions of an LPN at VMAC with a reasonable

accommodation.

Accordingly, the threshold issue before this Court is whether a genuine issue

of material fact exists as to whether Plaintiff can perform the essential functions of

the LPN position at VAMC hospital with a reasonable accommodation.  The

analysis of this issue is three-fold.  First, we must determine the essential functions

of an LPN at VMAC, and second, determine whether Plaintiff capable of

performing those functions.  Finally, we must ascertain whether Plaintiff can

perform the essential functions of the job with a reasonable accommodation.[5]

---

[5] In the main, three documents inform our analysis of the essential functions of an LPN at
VMAC; the Functional Statement for Licensed Practical Nurse ("Functional Statement") (Def. Ex. 12);
LPN-Primary Care and Medicine Service/Clinic and Emergency Room Area Essential Functions (Def.

Defendant argues that an essential function of an LPN at VMAC is the ability to perform the physical demands of the LPN position in each department. Particularly, with respect to "Flexibility/Adaptability, the  Functional Statement notes that an LPN must "[perform] other duties as assigned."  Both Essential Functions statements provide that a LPN will "provide clinic and other coverage as required."  Further, when Plaintiff was "floated" to the NHCU on a particular day, she suffered severe medical complications from performing the functions of the job.  Plaintiff concedes that she is unable to perform as a LPN in the NHCU.

Plaintiff argues that "floating" or "reassignment" to other departments is not an essential function of a LPN at VMAC, and notes specific individuals who are not required to "float" due to differing circumstances.  Plaintiff argues that the ability to "float" to different departments is not an essential function of the job if the policy is not applied unilaterally.  However, the individuals Plaintiffs cites *are not* LPNs with the exception of one, John Hornick ("Hornick").  With respect to Hornick, Plaintiff states that he "performed his duties in the clinic area and was not called out to other floors."  Notwithstanding her argument in this regard, we find Plaintiff's reliance on Hornick to be misplaced; it could simply be the case that Hornick has yet to be "floated" to another department.  Moreover, Plaintiff has

Ex. 19); and LPN-Nursing Home Care Unit Essential Functions (Def. Ex. 20).

made no showing that he was ever affirmatively relieved of this requirement.

Although Plaintiff contests that the ability to work interchangeably in each department is *not* an essential function of a LPN, a plain reading of the VMAC-generated requirements indicates that "providing coverage as required" *is* an essential function of a LPN.  (Def. Ex. 19 and 20).  In fact, Plaintiff herself experienced a reassignment in February 2003 based on a coverage need, and as a result experienced medical complications.  To the extent that Plaintiff is unable to "floor nurse" in the NHCU and other departments, she is quite clearly unable to perform the essential functions of the job with respect to "floating" or reassignment.

It is not disputed that Plaintiff's disability severely limits her range and duration of physical abilities.  The Essential Functions statements for LPNs in the ER and the NHCU *both* state that the jobs are "not sedentary and routinely requires *lifting,* stretching, *kneeling*, *twisting* and bending." (Def. Exs. 19 and 20, emphasis added).  Berrittini testified at his deposition that "[i]n order to provide patient care, a licensed practical nurse has to be able to lift, stretch, bend . . .[i]t's a function of a licensed practical nurse that they be able to lift, transport a patient, assist a patient up off the floor get down on their knees to perform CPR . . ."  (Def. Ex. 5, p. 45 ll. 23-25 - p. 46, l. 1).  Although Dr. Jacobs and Plaintiff disagree as to the length of

18

time she may stand or walk in one day, they both concede that Plaintiff cannot lift,

twist, kneel, push, pull or reach or work above her shoulder.  To the extent that

Plaintiff argues she was able to perform the essential functions of her job in the

past, we find this argument to be lacking.  Part of Plaintiff's position as an LPN in

the ER/clinic area was to "float" to NCHU to provide coverage needs in February

of 2003, a function which she decidedly could not perform.   Moreover, Plaintiff's

conditions are progressive, leading to the inevitable conclusion that she will

continue to be more and more limited in the future.  Plaintiffs limitations are directly

at odds with the requirements the VAMC has created for its LPNs.  This analysis

leads us to the conclusion, which Plaintiff impliedly concedes, that Plaintiff cannot

perform the essential functions of the job of an LPN at VAMC.

However, Plaintiff may still establish a *prima facie* case under Section 504 if

she can show that she can perform the essential functions of the job <u>with a</u>

<u>reasonable accommodation</u>.   A plaintiff can succeed under the Rehabilitation Act

only if he or she can "demonstrate that a specific, reasonable accommodation

would have allowed him or her to perform the essential functions of the job."

<u>Donahue</u>, 224 F.3d at 232 (quoting <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296,

319 (3d Cir. 1999).  Employers are not required to modify the essential functions of

a job to accommodate an employee.  <u>See</u> <u>id</u>.  Furthermore "[a]n employer's

19

obligation to provide a reasonable accommodation does not require the employer

to create a new job." Donahue, 224 F.3d at 230 (quoting Mengine v. Runyon, 114

F.3d 415, 417 (3d Cir. 1997).  An employer, however, may be required to transfer

an employee to an existing position as a reasonable accommodation.  See Mengine,

114 F.4d at 418.

The specific accommodation requested by Plaintiff was a reassignment from

the NHCU back to the ER/clinics.  (Def. Ex. 15 at 2-3).  Notwithstanding the fact

that this Court finds that Plaintiff cannot perform the essential functions of any LPN

position at the VAMC, the LPN position in the ER/clinics department of the

VAMC was eliminated.  As noted above, the Defendant is not required to create a

position as a reasonable accommodation, and accordingly Plaintiff's

accommodation request was not reasonable.  Furthermore, we find that the

Defendant did provide Plaintiff with a reasonable accommodation in the form of a

job reassignment to Medical Support Services.  Plaintiff accepted this reasonable

accommodation and holds the position to date.

Accordingly, because we find that Plaintiff is unable to state a *prima facie*

case under Section 504 because she cannot perform the essential functions of the

job, we shall grant summary judgment in favor of the Defendant Count I of the

complaint.  Furthermore, Plaintiff's failure to accommodate claim fails because

Plaintiff cannot show that her requested accommodation was reasonable.

Moreover, Plaintiff has been accommodated by Defendant by virtue of

reassignment to the Medical Support Services position.  We shall therefore grant

summary judgment with respect to Count III.

### B.    Retaliation Claim

In Count II, Plaintiff claims that Defendant retaliated against her in violation

of Section 504 of the Rehabilitation Act.  "[I]n order to establish a *prima facie*

case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show:

'(1) protected employee activity; (2) adverse action by the employer either after or

contemporaneous with the employee's protected activity; and (3) a causal

connection between the employee's protected activity and the employer's adverse

action.'"  Williams v. Philadelphia Housing Authority Police Dept., 380 F. 3d 751,

759 (3d Cir. 2004)(quoting Fogelman v. Mercy Hosp., Inc., 283 F.3d 561, 567-568

(3d Cir. 2002)).  Requesting a reasonable accommodation is considered a

protected activity.  See Williams, 380 F.3d at 759, n.2.

If a plaintiff establishes a *prima facie* case for retaliation, "the burden shifts

to the employer to advance a legitimate, non-retaliatory reason for its adverse

employment action."  Shellenberger v. Summit Bancorp, 318 F. 183, 197 (3d Cir.

2003)(quoting Krouse v. Am. Sterilizer Co., 126 F. 3d 494, 500 (3d Cir. 1997).  If

the employer satisfied his burden, the plaintiff must then prove that "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. Krouse, 126 F.3d at 501.

Plaintiff alleges she was transferred to the NHCU in retaliation after requesting a "reasonable accommodation" from Matkins not to be floated to the NHCU following her negative experience in February 2003. Defendant argues that Plaintiff retaliation claim fails because she cannot establish a causal connection between her accommodation request and subsequent transfer.

Plaintiff relies on the deposition testimony of Matkins, the supervisor to whom she reported her difficulties following her "float" shift in the NHCU in February 2003 in support of her retaliation claim. Within his testimony, Matkins states that he "would have" told Boytin about the Plaintiff's physical limitations with respect to nursing in the NHCU after his conversation with Plaintiff in February 2003. (Def. Ex. 2, p. 88-89). However, Matkins' testimony reveals that he *does not* remember a specific conversation with Boytin. He relies upon the fact that he "know[s] the type of manager he is," and accordingly must have relayed the information to Boytin. (Def. Ex. 2, p. 88-92). However, in her testimony, Boytin is emphatically clear that she was not at all aware of Plaintiff's inability to perform nursing services in the NHCU prior to her reassignment there. (Def. Ex. 3, p. 17-

22

18).   Boytin clearly testifies that she does not recall any conversation with Matkins

regarding Plaintiff's difficulties following her "float" to the NHCU.  (Def. Ex. 3, p.

17-18).

The decision to transfer the position ER LPN position to the NHCU was

based upon the nursing leadership assessment, which Boytin and Stout  both

testified revealed that the NHCU suffered from a critical shortage of  nursing staff.

(Def. Ex. 3, p. 18; Def. Ex. 4, p. 48). Prior to conducting the nursing assessment,

neither Stout nor Boytin had any knowledge of Plaintiff's physical conditions and

her inability to "floor nurse."  The assessment process involved a discussion of

staffing and patient care needs, patient volume, and a determination of patient need

and the appropriate skill mix of nursing staff to accomplish appropriate patient

care.  (Rec. Doc. 25 at ¶43).

Plaintiff, in its brief, makes conclusory, bare and unconnected factual

allegations, which amount to an unsupported opinion that the Defendant retaliated

against Plaintiff in transferring her position.  We cannot find that Plaintiff has

established a *prima facie* showing that a causal connection exists between the

protected activity and adverse employment action.  Plaintiff merely attempts to

throw an abundance of factual assertions up against the wall, in an effort to see

what might stick.  Plaintiff has demonstrated *no* causal connection between her

request and her transfer.  Furthermore, even assuming <u>arguendo</u> that a causal link

existed, Defendant has presented the nursing assessment in so much detail as to

make the entire process transparent.  Both Boytin and Stout completed the

assignment they were tasked to do, by highlighting staffing shortages and realigning

the nursing staff to provide appropriate patient care.  We cannot find an iota of

discriminatory or retaliatory motive behind the Defendant's actions.

Accordingly, because we find that Plaintiff has not established a *prima facie* case

for retaliation under the Rehabilitation Act, we shall grant summary judgment in

favor of the Defendant on Count II.

### C.    Civil Service Reform Act ("CSRA") Claim

In Count VII, Plaintiff states that "[t]he unlawful employment practices

hereinbefore stated constitute violations of the Civil Service Reform Act," 5 U.S.C.

§5, incorporating by reference the contents of her complaint.  The Defendant

argues that Plaintiff's CSRA claim should be dismissed because it is pre-empted

by the Rehabilitation Act.

In <u>Brown v. General Serv. Admin.</u>, 425 U.S. 820 (1976), the Supreme Court

held that Title VII "provides the exclusive judicial remedy for claims of

discrimination in federal employment." <u>Id</u>. at 835.  The holding in <u>Brown</u> applies

equally to the Rehabilitation Act, and the Third Circuit has held that "the

Rehabilitation Act is the exclusive means by which a litigant may raise claims of discrimination on the basis of [disability] by federal agencies." <u>Spence v. Straw</u>, 54 F.3d 196, 202-203 (3d Cir. 1995).  The Third Circuit reasoned that given the exhaustion requirements applicable to Title VII and Rehabilitation Act claims, "it would be anomalous to permit a litigant to avoid that remedial scheme by simply asserting an independent constitutional claim premised upon the same facts."  <u>Id</u>. Accordingly, because Plaintiff is an employee of the federal government, the Rehabilitation Act is the exclusive vehicle through which she may challenge the government's action in determining that she was medically disqualified from performance as an LPN at the VAMC.

Furthermore, Plaintiff's reliance on <u>Burkhart v. Potter</u>, 166 Fed. Appx. 650 (3d Cir. 2006) and <u>McAdams v. Reno</u>, 64 F. 3d 1137 (8th Cir. 1997) is misplaced. A federal employee who suffers an "adverse personnel action and also alleges discrimination in violation of Title VII presents a 'mixed case.'  Pursuant to 29 C.F.R. § 1614.302(b), the employee is afforded two options:   she can file either a mixed case complaint with her agency's EEO office or a mixed case appeal directly to the MSPB, 'but not both.'" <u>Burkhart</u>. at 652 (citations omitted).  Plaintiff alleges that by proceeding through the EEO process, as she did, her CSRA claim was not extinguished and she has the right to seek judicial review of the agency's decision

with respect to both types of claims.

In McAdams, the Eight Circuit noted that "[t]he record indicates that McAdams abandoned her discrimiation claims at the MSPB [by failing to raise at the appellate hearing before an ALJ her discrimination claims]. The district court thus properly determined that it lacked jurisdiction to consider them. This does not mean that every federal employee's hostile work environment claim must, or can, be raised as a mixed case. If a harassment or hostile work environment claim is not related to an appealable action,[6] separate EEO and MSPB actions would be appropriate." McAdams, 64 F. 3d at 1144.

In this action, Plaintiff's CSRA claim and discrimination claim are one and the same, as evidenced by the language of Count VII of Plaintiff's complaint. Plaintiff necessarily states that her CSRA claim is the same as the discrimination claims alleged in Counts I through VI. Plaintiff elected to pursue her claims of disability discrimination and retaliation with the EEO office, not the MSPB. Accordingly, her claims arise exclusively under the Rehabilitation Act and her CSRA claim shall be dismissed.

## CONCLUSION:

---

[6] "The MSPB's jurisdiction is limited to the review of specific 'appealable actions,' which include demotions and removals." McAdams, 64 F. 3d at 1141 n. 2 (citing 5 U.S.C. §1201).

For the foregoing reasons, we shall grant the instant Motion in favor of the Defendants on Counts I, II and III.  Count VII shall be dismissed and Counts IV, V and VI are deemed withdrawn by virtue of the Plaintiff's representation.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's Motion for Summary Judgment (doc. 23) is GRANTED to the following extent:

      a.      Judgment is entered in favor of the Defendant on Counts I, II and III.

      b.      Count VII is DISMISSED.

      c.      Counts IV, V, and VI are deemed WITHDRAWN.

2.      The Clerk is directed to close the file on this case.

s/ John E. Jones III
John E. Jones III
United States District Judge